**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

BANKERS HEALTHCARE GROUP, LLC,

                                        Plaintiff,                    5:23-cv-00611 (BKS/TWD)

v.

TCEX, LLC and CHARLES BURKE, JR,

                                        Defendants.

**Appearances:**

*For Plaintiff:*
Jordan R. Pavlus
Byrne, Costello & Pickard, P.C.
Tower I, Suite 1600
100 Madison Street
Syracuse, NY 13202

*For Defendants:*
Russell W. Dombrow
Dombrow Law Firm
499 South Warren Street, Suite 405
Syracuse, NY 13202

**Hon. Brenda K. Sannes, Chief United States District Judge:**

**MEMORANDUM-DECISION AND ORDER**

## I.      INTRODUCTION

        Plaintiff Bankers Healthcare Group, LLC (BHG) originally filed this breach of contract

action in New York Supreme Court, Onondaga County, against Defendants TCEx, LLC[1] and

Charles Burke, Jr. (*See* Dkt. No. 2). Defendants TCEx and Burke removed this case from state

---

[1] In the pending motions and their supporting and opposing filings, Plaintiff and Defendants differ in the capitalization of the LLC Defendant's name. (*See generally* Dkt. Nos. 7, 7-1, 11, 14-10). Defendants have subsequently filed the LLC's Articles of Organization, in which the LLC Defendant's name is identified as TCEx, LLC. (*See* Dkt. 21-2). The Court uses this capitalization.

court on the basis of diversity of citizenship pursuant to 28 U.S.C. §§ 1332(a)(1), 1441(b), and 1446. (Dkt. No. 1). Plaintiff moves to remand this case under 28 U.S.C. § 1447(c) on the grounds that the contract governing the dispute contains a forum-selection clause that grants Plaintiff the exclusive right to select the venue and waives the possibility of removal. (Dkt. No. 7). Defendants oppose Plaintiff's motion, cross-move to dismiss based on a lack of personal jurisdiction, or, alternatively, request that the Court transfer the case to the U.S. District Court for the Eastern District of North Carolina, Raleigh Division. (Dkt. No. 11). Both parties have filed replies. (Dkt. Nos. 14-10, 17). For the reasons that follow, Plaintiff's motion to remand is granted and Defendants' motion to dismiss or transfer is denied.

## II.    FACTS[2]

On October 12, 2021, BHG and Defendants entered into a financing agreement (labeled a "Promissory Note/Security Agreement/Personal Guaranty") (the "Financing Agreement") in which TCEx, the debtor, executed a promissory note agreeing to pay BHG, the creditor, $153,006.00 in 84 monthly installments of $1,821.50. (Dkt. No. 2, at 10–12). In connection with the Financing Agreement TCEx executed a security agreement providing BHG with a security interest in certain collateral and Burke executed a personal guaranty, guaranteeing TCEx's obligations under the Financing Agreement. (*Id.*). Defendant Burke signed the Financing Agreement as the Managing Member of TCEx. (*Id.*, at 11). BHG alleges that TCEx has failed to make the payments owed to BHG and that Burke has failed to pay the debt owed by TCEx, as required by the guaranty. (*Id.*, ¶¶ 6–21). BHG seeks to recover $96,044.82. (*Id.*, at 8).

The security agreement portion of the Financing Agreement contains a choice of law clause, a forum selection clause, and waiver provisions, reproduced (in relevant part) below:

---

[2] These facts are drawn from the State Court Complaint and the exhibits attached to that Complaint. (Dkt. No. 2).

APPLICABLE LAW/JURISDICTION & VENUE. The terms of the Financing Agreement and all loan documents executed herewith shall be governed by and construed in accordance with the substantive and procedure laws of Florida, exclusive of the principles of contract of laws. Venue for any action brought hereunder, shall be the choice of the Creditor, and shall be limited to either Onondaga County, New York or Broward County, Florida, or, if the action involves or is brought against the Collateral, in a state court in the county where such Collateral is located, where required to enforce Creditor's rights as to or against the Collateral, unless Creditor selects an alternative forum. Debtor agrees to submit to the personal jurisdiction of the appropriate court in the State of New York, Onondaga County or State of Florida, Broward County, for all such disputes. . . . The Debtor further waives any right the Debtor may have to transfer or change the venue of any litigation brought against Debtor by Creditor, the right to interpose any defense or motion based on Forum Non Conveniens or Venue, and any claim for consequential, punitive or special damages.

. . .

DEBTOR FURTHER WAIVES ANY RIGHT TO REMOVE ANY STATE COURT ACTION TO FEDERAL COURT.

(*Id.*). Directly under this waiver, Burke initialed a statement that reads: "I have read and understand the applicable law, jurisdiction, venue, and waivers." (*Id.*).

The personal guaranty portion of the Financing Agreement, signed by Burke, contains a similar choice of law clause, forum selection clause, and waivers:

The terms of this Guaranty shall be governed by and construed in accordance with the substantive and procedure laws of the State of Florida, exclusive of the principles of contract of laws. Venue for any action brought hereunder, shall be the choice of the Creditor, and shall be limited to Onondaga County, New York or Broward County, Florida. Debtor agrees to submit to the personal jurisdiction of the appropriate State of New York or State of Florida Court for all such disputes.

. . .

GUARANTOR FURTHER WAIVES ANY RIGHT TO REMOVE ANY STATE COURT ACTION TO FEDERAL COURT. Guarantor further waives any right Guarantor may have to transfer or change the venue of any litigation brought against Debtor by Creditor, the right to interpose any defense or motion based on Forum Non Conveniens or Venue, and any claim for consequential, punitive or special damages.

3

(*Id.*, at 12).[3]

## III.   DISCUSSION

### A.   Remand

#### 1.   Standard of Review

28 U.S.C. § 1447(c) provides a mechanism for remand to state court: "A motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a). If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." "[O]n a motion to remand, the party seeking to sustain the removal, not the party seeking remand, bears the burden of demonstrating that removal was proper." *Pate v. City of Rochester*, 579 F. Supp. 3d 417, 420 (W.D.N.Y. 2022) (quoting *Hodges v. Demchuk*, 866 F. Supp. 730, 732 (S.D.N.Y. 1994)). "When considering a motion to remand, the district court accepts as true all relevant allegations contained in the complaint and construes all factual ambiguities in favor of the plaintiff." *Macklin v. Lexington Ins. Co.*, No. 20-cv-05372, 2020 WL 5796814, at *2, 2020 U.S. Dist. LEXIS 179427, at *5 (S.D.N.Y. Sept. 29, 2020).

#### 2.   Enforceability of Forum Selection Clause

The Supreme Court has held that "a valid forum-selection clause should be given controlling weight in all but the most exceptional circumstances" because the enforcement of a forum-selection clause "bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system." *Atl. Marine Const. Co. v. U.S. Dist. Court for W.*

---

[3] As the forum selection clause found in the security agreement section of the Financing Agreement is largely and substantively identical to that of the forum selection clause found in the personal guaranty section, and because the language of the former covers the personal guaranty as well, (*see* Dkt. No. 2, at 11 (applying to "[t]he terms of the Financing Agreement *and all loan documents executed herewith*" (emphasis added))), the Court refers throughout to the first forum selection clause, rather than analyzing each individually.

*Dist. of Tex.*, 571 U.S. 49, 63 (2013) (citation and internal quotation marks omitted) (alteration in original).

Furthermore, "[p]arties are free to bind themselves to forum selection clauses that trump what would otherwise be a right to remove cases to federal courts." *Yakin v. Tyler Hill Corp.*, 566 F.3d 72, 76 (2d Cir. 2009) (citations omitted). At the same time, "it is well established in this Circuit that waiver of a party's statutory right to remove a case to federal court must be clear and unequivocal." *Rabbi Jacob Joseph Sch. v. Province of Mendoza*, 342 F. Supp. 2d 124, 128 (E.D.N.Y. 2004).

The Second Circuit "employ[s] a four-part framework" in evaluating a forum selection clause. *See Rabinowitz v. Kelman*, 75 F.4th 73, 81 (2d Cir. 2023). The first three steps require the court to ask:

> (1) "whether the clause was reasonably communicated to the party resisting enforcement," (2) "whether the clause is mandatory," that is, whether the parties are *required* to bring any dispute to the designated forum or simply *permitted* to do so, and (3) "whether the claims and parties involved in the suit are subject to the forum selection clause."

*Id.* (quoting *Martinez v. Bloomberg LP*, 740 F.3d 211, 217 (2d Cir. 2014)). A forum selection clause is "presumptively enforceable" "[i]f the answer to all three questions is yes." *Id.* (quoting *Martinez*, 740 F.3d at 217). "At the fourth step, the court asks (4) whether the resisting party has rebutted that presumption by 'making a sufficiently strong showing that enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching.'" *Id.* (quoting *Martinez*, 740 F.3d at 217).

"The overriding framework governing the effect of forum selection clauses in federal courts . . . is drawn from federal law." *Martinez*, 740 F.3d at 217. "The Second Circuit has held that federal law governs the first and fourth steps of forum selection clause analysis regardless of

the existence of a choice of law provision." *Prod. Res. Grp., LLC. v. Martin Prof., A/S*, 907 F. Supp. 2d 401, 409 (S.D.N.Y. 2012). But "[i]n answering the *interpretive* questions posed by parts two and three of the four-part framework . . . we normally apply the body of law selected in an otherwise valid choice-of-law clause." *Martinez*, 740 F.3d at 217–18. However, the use of federal law to interpret a forum selection clause remains appropriate if the parties have not "urged the application of any specific element of the contractually chosen body of law to govern the interpretation of the forum selection clause." *Id.* at 223. "[L]itigating 'parties by their acquiescence . . . may induce the trial court to assume that foreign law is similar to that of the forum,' with the result that a court does not err when it articulates its decision by reference to the law of the forum." *Id.* (quoting *Walter E. Heller & Co. v. Video Innovations, Inc.*, 730 F.2d 50, 53 (2d Cir. 1984)).

Here, the Financing Agreement and the personal guaranty require that their terms be interpreted under Florida law. (Dkt. No. 2, at 11, 12). However, neither Plaintiff nor Defendants rely on Florida law in analyzing the second step of test, whether the forum selection clause is mandatory or permissive—both parties exclusively rely on precedent from within the Second Circuit on this question. (*See* Dkt. No. 7-1, at 5–7; Dkt. No. 11, at 17–19; Dkt. No. 14-10, at 7; Dkt. No. 17, at 5–6). Additionally, neither party cites Florida law (or any law) related to the third step of the test, whether the forum selection clause governs the claims and parties at issue.[4] As a result, the Court assumes that the parties have chosen "not to 'rely on any distinctive features of [the selected law] and [instead to] apply general contract law principles and federal precedent to discern the meaning and scope of the forum clause." *Martinez*, 740 F.3d  at 223 (quoting *Phillips*

---

[4] Plaintiff does not cite Florida law in either of its briefs addressing the pending motions. (*See* Dkt. Nos. 7-1, 14-10). Defendants in their briefs do cite Florida law when discussing principles of personal jurisdiction and public policy, but do not rely on it in interpreting the forum selection clause. (*See* Dkt. No. 11, at 12, 14; Dkt. No. 17).

*v. Audio Active Ltd.*, 494 F.3d 378, 386 (2d Cir. 2007)); *see, e.g.*, *Midamines SPRL Ltd. v. KBC Bank NV*, No. 12-cv-8089, 2014 WL 1116875, at *3, n.6, 2014 U.S. Dist. LEXIS 37731, at *10 n.6 (S.D.N.Y. Mar. 18, 2014), *aff'd*, 601 Fed. App'x. 43 (2d Cir. 2015) (summary order).

### a.    Presumption of Validity

The parties do not explicitly refer to the first three parts of the test to determine the presumptive validity of a forum selection clause as such. Nonetheless, the issues are addressed throughout the filings. All the conditions necessary for presumptive validity are met here.

First, the clause was reasonably communicated to Defendants. Defendants do not dispute this, except to the extent that they claim the contract was written "in difficult to read, small print" and that "[t]he terms are also written using 'legalese.'" (Dkt. No. 17, at 9). But, as Plaintiff correctly states, "it is a fundamental principle of contract law that a person who signs a contract is presumed to know its terms and consents to be bound." (Dkt. No. 14-10, at 8 (quoting *Frankford Crossing Shopping Ctr. Dallas, Tx. Ltd. P'ship v. Pho Partners, LLC*, 942 F. Supp. 2d 366, 370 (W.D.N.Y. 2013) (citation omitted))). Furthermore, "[t]hough not highlighted, the clause is no less prominent than most of the other terms of the document" and Burke "does not contend that he did not read the forum selection provision or that he was confused about its meaning." *Frankford Crossing Shopping Ctr.*, 942 F. Supp. 2d at 370; (*see also* Dkt. No. 2, at 10–12; Dkt. No. 10). The "Applicable Law/Jurisdiction & Venue" section of the Financing Agreement is comprised of two paragraphs and this statement: "I have read and understand the applicable law, jurisdiction, venue and waivers." (Dkt. No. 2, at 11). Burke initialed the statement. (*Id.*). The Court therefore concludes the forum selection clause was communicated to Defendants.

Second, the forum selection clause is mandatory. Forum selection clauses can either be permissive or mandatory. *See Rabinowitz*, 75 F.4th at 82. "[A] permissive forum selection clause

'confers jurisdiction in the designated forum, but does not deny plaintiff his choice of forum, if jurisdiction there is otherwise appropriate.'" *Id.* (quoting *Glob. Seafood Inc. v. Bantry Bay Mussels Ltd.*, 659 F.3d 221, 225 (2d Cir. 2011)). "A forum selection clause is considered mandatory where: (1) 'it confers exclusive jurisdiction on the designated forum' or (2) 'incorporates obligatory venue language.'" *Glob. Seafood Inc.*, 659 F.3d at 225 (quoting *Phillips*, 494 F.3d at 386). Unlike permissive forum selection clauses, "[m]andatory forum selection clauses 'require that disputes *must* be brought in the designated forum, to the exclusion of all other fora where jurisdiction may also lie.'" *Rabinowitz*, 75 F.4th at 82 (quoting *Glob. Seafood Inc.*, 659 F.3d at 225). To be considered exclusive, a forum selection clause must "contain[] specific language of exclusion, or . . . leave[] it in the control of one party with power to force on its own terms the appropriate forum." *Octave-1 Fund Ltd. v. Morgan*, No. 13-cv-4607, 2013 WL 5834469, at *1, 2013 U.S. Dist. LEXIS 155741, at *4 (S.D.N.Y. Oct. 30, 2013) (quoting *City of New York v. Pullman Inc.*, 477 F. Supp. 438, 442 n.11 (S.D.N.Y. 1979)). Defendants assert that the clause is permissive because it allows Plaintiff multiple options for where to file a lawsuit. (Dkt. No. 11, at 18–19; Dkt. No. 17, at 6). Plaintiff explains, however, that "the very clear and explicit language in the Financing Agreement . . . precludes the removal of this action to" federal court, (Dkt. No. 7-1, at 5); that the Financing Agreement "grant[ed] BHG sole discretion to choose the forum in which to litigate disputes," (*id.,* at 6); and that "[D]efendants explicitly waived the right to transfer or change venue of the action," (*id.*, at 7).

Plaintiff is correct. "The fact that the choice of forum is left to the discretion of one party does not render the clause permissive and thereby unenforceable." *Octave 1-Fund Ltd.*, 2013 WL 5834469, at *1, 2013 U.S. Dist. LEXIS 155741, at *4 (upholding as mandatory a forum selection clause permitting the plaintiff the exclusive right to choose any state or federal court in New

York for suit); *AGR Fin., L.L.C. v. Ready Staffing, Inc.*, 99 F. Supp. 2d 399, 402 (S.D.N.Y. 2000) (explaining that contract granting plaintiff the right to choose either New York State or federal court as the forum meant that plaintiff "is not compelled to bring suit in either forum but once it chooses to do so, its decision is binding"). The Court finds the forum selection clause, containing language leaving the choice of venue to only one party and waiving the right to remove, transfer, or otherwise contest jurisdiction, is sufficiently exclusive.

Here, the forum selection clause states that "[v]enue for any action . . . shall be the choice of the Creditor, and shall be limited to either Onondaga County, New York or Broward County, Florida." (Dkt. No. 2, at 11). Thus, although it identifies two counties where the parties agree venue would be proper, because it gives Plaintiff the right to choose venue, the forum selection clause appears to be mandatory. *See, e.g.*, *Exp.-Imp. Bank of U.S. v. Hi-Films S.A. de C.V.*,  No. 9-cv-3573, 2010 WL 3743826, at *6–7, 2010 U.S. Dist. LEXIS 100927, at *20–23 (S.D.N.Y. Sept. 24, 2010) (finding forum selection clause to be mandatory where it "list[s] a number of courts in which the parties agree jurisdiction would be proper, but leave[s] it to one party . . . to determine where in fact a lawsuit will proceed" and where the defendants had "waive[d] expressly any other jurisdiction to which they might have a right" (internal quotation marks omitted)).

Defendants argue that because the forum selection clause does not specify that an action be litigated in state court, it does not exclude federal jurisdiction. (Dkt. No. 11, at 18). Defendants also note that there are state and federal courts located in both Onondaga and Broward Counties. (*Id.*). This argument has some initial appeal as the provision Defendants cite regarding choice of venue does not mandate jurisdiction. *See*, *e.g.*, *Yakin*, 566 F.3d at 74–76 (observing that agreement stating "that the venue and place of trial of any dispute . . . shall be in

Nassau County, New York" "merely contains obligatory venue language," but "convey[ed] nothing about the parties' intent as to jurisdiction"); *see also John Boutari & Son, Wines & Spirits, S.A. v. Attiki Imps. & Distribs. Inc.*, 22 F.3d 51, 53 (2d Cir. 1994) ("[A]n agreement *conferring* jurisdiction in one forum will not be interpreted as *excluding* jurisdiction elsewhere unless it contains specific language of exclusion." (citation omitted)). But as the Financing Agreement states in all capital letters that the "Debtor Further Waives Any Right to Remove Any State Court Action to Federal Court," (Dkt. No. 2, at 11), thereby expressly excluding federal jurisdiction where Plaintiff has chosen to bring an action in state court, the Court concludes the forum selection clause is mandatory. *See Exp.-Imp. Bank of U.S.*, 2010 WL 3743826, at \*6–7, 2010 U.S. Dist. LEXIS 100927, at \*20–23; *see also Frankford Crossing Shopping Ctr.*, 942 F. Supp. 2d at 372 (explaining that "[i]t is well stablished that a forum selection clause may act as a waiver of defendant's right to remove an action to federal court" as long as that waiver is "clear and unequivocal" (quoting *JP Morgan Chase Bank, N.A. v. Reijtenbagh*, 611 F. Supp. 2d 389, 390 (S.D.N.Y. 2009))).

Third, the clause covers the claims and parties in dispute. "The third step requires the Court to decide whether the claims and parties involved in the suit are subject to the forum selection clause. In order to make that determination, the language in the agreements mandating that any claim arising out of the agreements must encompass [BHG's] suit." *Reed Int'l, Inc. v. Afghanistan Int'l Bank*, 657 F. Supp. 3d 287, 308 (S.D.N.Y. 2023). To ascertain "the applicability of a contractual provision to particular claims, [courts] examine the substance of those claims." *Phillips*, 494 F.3d at 388.

Both of BHG's claims fall within the scope of the forum selection clause. BHG's first claim is that TCEx is in breach of the Financing Agreement by failing to make timely payments

on the loan and failing to cure the default when notified. (Dkt. No. 2, ¶¶ 6–16). BHG's second

claim is that Burke is in breach of the personal guaranty as he did not pay TCEx's debt to BHG

upon notification of TCEx's default. (*Id.* ¶¶ 17–21). The Financing Agreement provides: "The

terms of the Financing Agreement and all loan documents executed herewith shall be governed

by and construed in accordance with the substantive and procedure laws of the state of Florida . .

. . Venue for any action brought hereunder shall be the choice of the Creditor." (*Id.* at 11).

BHG's claims allege that Defendants violated the Financing Agreement and loan documents and

are therefore subject to the broad forum selection clause, which governs "any action brought

hereunder." (*See id.*).

### b.    Additional Considerations

As the forum selection clause is presumptively valid, Defendants bear a "heavy burden"

in overcoming its enforcement. *Martinez*, 740 F.3d at 219. A court must "decline to enforce a

forum selection clause . . . if: (1) its incorporation was the result of fraud or overreaching; (2) the

law to be applied in the selected forum is fundamentally unfair; (3) enforcement contravenes a

strong public policy of the forum in which suit is brought; or (4) trial in the selected forum will

be so difficult and inconvenient that the plaintiff effectively will be deprived of his day in court."

*Martinez*, 740 F.3d at 228 (internal quotation marks omitted) (quoting *Phillips*, 494 F.3d at 392).

### i.    Fraud or Overreaching

Defendants contend that Burke is a consumer exercising minimal bargaining power,

rather than a sophisticated party. (Dkt. No. 17, at 2–4). But such inequality does not itself

indicate overreaching. *See Brodsky v. Match.com LLC*, No. 09-cv-5328, 2009 WL 3490277, at

*3, 2009 U.S. Dist. LEXIS 101167, at *7 (S.D.N.Y. Oct. 28, 2009) (explaining that the

plaintiff's argument "that the forum selection clause is overreaching because the clause is part of

a contract of adhesion between parties with unequal bargaining power . . . cannot withstand

scrutiny in light of Supreme Court authority and case law in this Circuit, which makes clear that a forum selection clause is not unenforceable even if it appears in a contract of adhesion" (citation omitted)). And while Defendants suggest that BHG is improperly engaged in providing consumer loans disguised as business loans, (Dkt. No. 11, at 6–9), Defendants do not allege any facts suggesting that any fraud occurred in relation to the inclusion of the forum selection clause in the contract. *See Brodsky*, 2009 WL 3490277, at *3, 2009 U.S. Dist. LEXIS 101167, at *9. ("[G]eneral allegations that the contract as a whole was tainted by fraudulent inducement are insufficient to invalidate a forum selection clause where . . . a plaintiff has not alleged fraudulent inducement with respect to the forum selection clause itself." (citations omitted)).

### ii.    Fundamental Unfairness

"To prevail on fundamental unfairness grounds, [the party opposing the enforcement of the forum selection clause] must show that the application of the foreign law presents a danger that [it] will be deprived of *any* remedy or treated unfairly." *Jalee Consulting Grp. Inc. v. XenoOne, Inc.*, 908 F. Supp. 2d 387, 397 (S.D.N.Y. 2012) (internal quotation marks omitted) (quoting *Roby v. Corp. of Lloyd's*, 996 F.2d 1353, 1363 (2d Cir. 1993)). Defendants do not meet this standard. Defendants argue that "Burke would be severely prejudiced and may effectively be prohibited from litigating" his claim for damages under the Fair Debt Collection Practices Act (FDCPA) if the suit proceeds in New York. (Dkt. No. 11, at 21 (explaining that the FDCPA authorizes damages for violating the venue requirements articulated in 15 U.S.C. § 1692i)).  But Defendants do not explain why Burke could not bring the same damages claim in New York State Court as he could in federal court. (*See generally* Dkt. No. 11, at 21); *see also* 15 U.S.C. § 1692k (authorizing FDCPA claims to be brought in federal district courts as well as "any other court of competent jurisdiction"); *Fritz v. Resurgent Cap. Servs., LP*, 955 F. Supp. 2d 163, 174–

75 (E.D.N.Y. 2013) (explaining that "an adjudication that plaintiffs are indebted to defendants would not preclude plaintiffs from claiming that defendants violated the FDCPA"); *cf. Balk v. Feuerstein & Smith, LLP*, 2011 WL 1557948, at *1, 2011 U.S. Dist. LEXIS 44200, at *2 (W.D.N.Y. Apr. 25, 2011) (finding collateral estoppel did not preclude FDCPA claim "because FDCPA violations can be separated from underlying state litigation"). Even if Defendants were correct in their assessment, "the potential unavailability of certain claims, or even the entire action, in the selected forum is insufficient to make the forum-selection clause unreasonable or unjust." *Kasper Glob. Collection & Brokers, Inc. v. Glob. Cabinets & Furniture Mfrs. Inc.*, 952 F. Supp. 2d 542, 565 (S.D.N.Y. 2013) (citations omitted). As a result, Defendants have not demonstrated that proceeding in state court would be fundamentally unfair.

### iii.      Public Policy

Defendants contend that the forum selection clause would be contrary to federal public policy, as well as the public policy of specific states. (Dkt. No. 11, at 13–17).

### (i)      The FDCPA

Defendants principally argue that the forum selection clause is contrary to public policy as reflected in the FDCPA. (*Id.*). They argue that the loan at issue is not a commercial loan, as it appears, but instead substantively qualifies as a consumer loan. (Dkt. No. 11, at 6–9). Because of the consumer nature of the loan, according to Defendants, enforcing the forum selection clause would contravene the strong public policy in the FDCPA venue provision, 15 U.S.C. § 1692i. (Dkt. No. 11, at 13–17; Dkt. No. 17, at 4–5).

The FDCPA "establishes certain rights for consumers whose debts are placed in the hands of professional debt collectors for collection." *DeSantis v. Comput. Credit, Inc.*, 269 F.3d 159, 161 (2d Cir. 2001). The FDCPA venue provision requires that "[a]ny debt collector who

brings any legal action on a debt against any consumer" either bring suit "in the judicial district .

. . (A) in which such consumer signed the contract sued upon; or (B) in which such consumer

resides at the commencement of the action." 15 U.S.C. §1692i(a). The venue provision was

enacted "to address . . . the 'problem of "forum abuse," an unfair practice in which debt

collectors file suit against consumers in courts which are so distant or inconvenient that

consumers are unable to appear,' hence permitting the debt collector to obtain a default

judgment." *Hess v. Cohen & Slamowitz LLP*, 637 F.3d 117, 120 (2d Cir. 2011) (quoting S. Rep.

No. 95-382, at 5 (1977), *reprinted in* 1977 U.S.C.C.A.N. 1695, 1699). "[A]ctions arising out of

commercial debts are not covered by the protective provisions of the FDCPA." *Goldman v.*

*Cohen*, 445 F.3d 152, 154 n.1 (2d Cir. 2006) (citation omitted), *superseded by statute on other*

*grounds as stated in Carlin v. Davidson Fink LLP*, 852 F.3d 207, 212–13 (2d Cir. 2017). In

"determin[ing] whether the transaction was primarily consumer or commercial in nature, courts

typically examine the transaction as a whole, paying particular attention to the purpose for which

the credit was extended." *Nicolaides v. Divine and Serv., Ltd.*, 382 F. Supp. 3d 251, 255

(E.D.N.Y. 2019) (internal quotation marks omitted) (quoting *Bloom v. I.C. Sys., Inc.*, 972 F.2d

1067, 1068 (9th Cir. 1992)).

  The loan on its face appears to be a commercial loan, as it consists of a transaction

between BHG and an LLC, TCEx. (*See* Dkt. No. 2, at 10–12). The Financing Agreement

describes the promissory note as a "commercial promissory note" and states that it is "for

*commercial* purposes." (*Id.*, at 10 (emphasis added)). The security agreement portion of the

document contains a clause labeled "Commercial Transaction," which states that "Debtor hereby

acknowledges, warrants, and represents that this is a commercial transaction [and] that the

Debtor is in fact a business." (*Id.*, at 11). In support of their argument that this was a consumer

loan within the meaning of the FDCPA, Defendants have submitted an affidavit from Burke,

(Dkt. No. 10), and an email reflecting an exchange between Burke and BHG, (Dkt. No. 11-1, at

7).[5] Burke alleges that he told BHG's representatives that he wanted an "unrestricted, unsecured

loan to use for ordinary and typical household and consumer uses" and that BHG

"representatives told [him] that the loan [he] could apply for had no restrictions upon how [he]

used or spent the funds, so [he] was free to use or spend those funds as [he] saw fit," (Dkt. No.

10, ¶ 3). Burke states that he understood from phone calls with BHG representatives "that the

only way that [BHG] would issue a loan to [him] was through a business entity of some sort

supported by [his] personally guaranteeing the loan for that business entity," (*id.*, ¶ 4); that he

told BHG representatives "TCex did not have any revenue, and might never have any revenue,"

(*id.*, ¶ 7); that he paid the loan at least in part through a personal bank account, (*id.*, ¶ 11); and

that the loan was used "for a variety of ordinary household and consumer expenses," (*id.*, ¶ 14).

Burke submitted an email from a BHG representative stating that the loan "is a commercial

loan," but unlike most commercial loans which "have strict requirements as to how to use the

funds, we do not have any restrictions." (Dkt. No. 11-1, at 7). Burke acknowledges speaking

multiple times with BHG representatives while undergoing the loan application process, as well

as negotiating a lower interest rate than was originally offered to him. (Dkt. No. 10, ¶¶ 3, 10).

Additionally, Burke does not dispute the fact that he is an attorney with a website that advertises

---

[5] Although the parties did not brief this, it appears that the Court may consider evidence beyond the complaint in determining the propriety of removal. *See Resetarits Const. Corp. v. E & N Const., Inc.*, No. 19-cv-1258, 2021 WL 1699727, at *5, 2021 U.S. Dist. LEXIS 82578, at *14 (W.D.N.Y. Apr. 29, 2021). (noting that the Court may consider "facts disclosed in the record of the case as a whole in determining the propriety of removal") (citing 14C Charles Alan Wright, Arthur R. Miller, Edward H. Cooper, Joan E. Steinman & Mary Kay Kane, Federal Practice and Procedure § 3734, at 719 (Jurisd. 2018))).

"his wealth of experience handling complex intellectual property disputes." (*See* Dkt. No. 14-5; Dkt. No. 14-6; Dkt. No. 17, at 2).

In response, Plaintiff submitted an affidavit from Plaintiff's Vice President of Client Services asserting that Defendants "repeatedly and expressly agreed that this was a commercial transaction." (Dkt. No. 14, ¶ 18). Plaintiff submitted additional documents indicating Burke knew the transaction was commercial and that he was repeatedly required to affirm this knowledge. (*See* Dkt. Nos. 14-1, 14-2, 14-3). A "Statement of Intended Primary Purpose of the Loan" signed by Burke states that he "applied for a commercial loan with" BHG, that he "understand[s] and acknowledge[s] that a 'Commercial Loan' is a loan, the proceeds of which are intended by the borrower for use primarily for other than personal, family, or household purposes," and that he "will be responsible to use the proceeds of the loan, if funded, in accordance with this 'Statement of Intended Purpose.'" (Dkt. No. 14-2). Burke's stated purpose for the loan is "Business Development." (*Id.*). Another exhibit, labeled "Verification of Funding," (Dkt. No. 14-1), is described as "part of the due diligence BHG conducts and reflects a telephone audit" conducted by a BHG representative. (Dkt. No. 14, ¶ 21). The document indicates a BHG Representative confirmed with Burke that the "promissory note has been executed as a commercial transaction" and asked Burke to "confirm that the funds borrowed are being used for commercial purposes." (Dkt. No. 14-1). Plaintiff also submitted an "Authorization Agreement for Automatic Withdrawals," signed by Burke, which states "all the payments due as set forth in your payment schedule shall be made in the form of an ACH transfer directly from your *commercial* bank account." (Dkt. No. 14-3 (emphasis added)).

Defendants have not cited any case law which considers the impact of a forum selection clause on the FDCPA's special venue provision. Courts have enforced forum selection clauses

which conflict with special venue provisions in other federal statutes. *See, e.g.*, *DeBello v. VolumeCocomo Apparel Inc.*, 720 F. App'x 37 (2d Cir. 2017) (summary order) (finding forum selection clause enforceable even though it conflicted with Title VII's special venue provision); *Klotz v. Xerox Corp.*, 519 F. Supp. 2d 430, 435–36 (S.D.N.Y. 2007) (noting that "[t]he vast majority of district courts have enforced forum selection clauses in ERISA plans"). For example, in *DeBello*, the Second Circuit considered whether a forum selection clause should be enforced in a case involving a Title VII claim. Title VII contains a "special venue provision," indicating where venue is proper for qualifying employment discrimination claims and the forum selection clause in that case designated a different venue. 720 F. App'x at 40 (citing 42 U.S.C. § 2000e-5(f)(3)). The Second Circuit, while not adopting a per se rule, stated that it was "not persuaded here that the freely-bargained forum selection clause is unenforceable based solely on its conflict with a policy preference reflected in Title VII's special venue provision." *Id.* at 41. In finding the forum selection clause enforceable even though it conflicted with Title VII's special venue provision, the Circuit emphasized that the party seeking to avoid enforcement of the forum selection clause "retains his right to litigate his discrimination claims," that he was "an experienced professional" who "willingly entered into his employment agreement knowing it contained a forum selection clause" and "did so after he had the opportunity to consult with an attorney and make changes to the Agreement," and that he "regularly interacted" with the Defendant's employees in the agreed-upon venue. *Id.*

In any event, on this record, Burke has not shown that public policy as reflected in the FDCPA special venue provisions has made this an "exceptional case" that would warrant a finding that a forum selection clause is unenforceable. *See DeBello*, 720 Fed. App'x 37, at 41 (quoting *Atl. Marine*, 571 U.S at 63). Burke is an experienced attorney, (*see* Dkt. No. 14-5; Dkt.

No. 14-6), who, after speaking multiple times with BHG, negotiated an (albeit limited) aspect of

a loan in a transaction that was structured to be, and repeatedly described as, a commercial loan,

(*see* Dkt. No. 10, ¶¶ 3, 10). To the extent Burke has a claim under the FDCPA, he could pursue

that claim in state court. (*See supra* Part III.B.2.b). In light of the "strong federal public policy

supporting the enforcement of forum selection clauses," *Martinez*, 740 F.3d. at 219, Burke has

failed to meet his burden of showing that its enforcement here would be unreasonable or unjust.

### (ii)    Florida and New York Public Policy

Defendants also state that "Florida law . . . provides that a forum selection clause against

an out of state defendant is not enforceable unless the defendant has sufficient contacts with the

state separate and apart from the forum selection clause." (Dkt. No. 11, at 14). But as it is the

public policy of the forum state that is relevant to the inquiry, Florida public policy (even if

correctly stated) is irrelevant. *See NuMSP, LLC v. St. Etienne*, 462 F. Supp. 3d 330, 345

(S.D.N.Y. 2020) ("[I]n determining whether a forum selection provision is invalid, the Court

focuses on the public policy of the *forum state*, not some other state." (citing *Martinez*, 740 F.3d

at 228)). This leaves the Court with Defendants' objections based on the public policy of New

York.

Based on their interpretation of the New York General Obligations Law Section 5-1402,[6]

Defendants assert that forum selection clauses are disfavored by New York when a defendant has

limited contacts with the state. (Dkt. No. 11, at 14). Defendants, however, misunderstand and

---

[6] New York General Obligations Law Section 5-1402 states: "Notwithstanding any act which limits or affects the right of a person to maintain an action or proceeding . . . any person may maintain an action or proceeding against a foreign corporation, non-resident, or foreign state where the action or proceeding arises out of or relates to any contract, agreement or undertaking for which a choice of New York law has been made in whole or in part pursuant to section 5-1401 and which (a) is a contract, agreement or undertaking, contingent or otherwise, in consideration of, or relating to any obligation arising out of a transaction covering in the aggregate, not less than one million dollars, and (b) which contains a provision or provisions whereby such foreign corporation or non-resident agrees to submit to the jurisdiction of the courts of this state."

mischaracterize the relevant provision. "Section 5-1402 'is not a limitation on the use and

effectiveness of forum selection clauses. Rather, it contains a statutory mandate that a clause

designating New York as the forum shall be enforceable, in cases involving $1 million or more,

regardless of any inconvenience to the parties.'" *Int'l Med. Tech., Inc. v. Lintech, LLC*, No. 98-

cv-4794, 2000 WL 1449889, at *1, 2000 U.S. Dist. LEXIS 19522, at *5 (S.D.N.Y. Sept. 25,

2000) (citing *Nat. Union Fire Ins. Co. v. Worley*, 690 N.Y.S.2d 57, 59 (App. Div. 1st Dep't

1999)). Moreover, Defendants are simply incorrect. "New York has a strong public policy

of *enforcing* forum selection clauses so that parties are able to rely on the terms of the contracts

they make." *Brodsky*, 2009 WL 3490277, at *4, 2009 U.S. Dist. LEXIS 101167, at *12 (citation

omitted).

### iv.       Denial of Day in Court

Defendants point to the inconvenience and expense of litigating in New York. (Dkt. No.

11, at 23 (arguing that "[a]s a consumer resident of North Carolina, it would be very expensive

and burdensome for Burke to have to defend a lawsuit in New York" (citing Dkt. No. 10, ¶ 16))).

In response, Plaintiff argues that "[n]early all of modern litigation practice in Onondaga County

Supreme Court is conducted electronically and appearances are generally virtual" and that

transfer of this matter to North Carolina "would be a hardship to BHG," (Dkt. No. 14-10, at 11),

assertions that Defendants contest, (Dkt. 17, at 9–10). Defendants' arguments of inconvenience

fail to suggest continuing litigation in New York will effectively deny them their day in court.

The Second Circuit has explained "[a] plaintiff may have his 'day in court' without ever setting

foot in a courtroom." *Effron v. Sun Line Cruises, Inc.*, 67 F.3d 7, 11 (2d Cir. 1995) (citation

omitted); *see also id.* ("[T]he right to a day in court means not the actual presentation of the case,

but the right to be duly cited to appear and to be afforded an opportunity to be heard." (quoting

*Olsen v. Muskegon Piston Ring Co.*, 117 F.2d 163, 165 (6th Cir. 1941))). Courts frequently reject such arguments based on the distance of the forum. *See, e.g.*, *Starkey v. G Adventures, Inc.*, 796 F.3d 193, 198 (2d Cir. 2015) (referring to "the time and expense involved in traveling and the difficulty of ensuring that witnesses will testify on her behalf . . . as 'the obvious concomitants of litigation abroad' rather than circumstances 'that would prevent [a plaintiff] from bringing suit.'" (quoting *Phillips*, 494 F.3d at 393)); *Effron*, 67 F.3d at 11 (finding Florida resident's "conclusory assertions that she cannot afford to travel to Greece, that she would be afraid to stay at a strange city, [and] that she does not know any Greek lawyers" to be insufficient to show denial of a day in court). Accordingly, the Court concludes that the forum selection clause is valid and enforceable.

### B.      Personal Jurisdiction

"In order to survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie showing that jurisdiction exists." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 167 (2d Cir. 2013) (quoting *Thomas v. Ashcroft*, 470 F.3d 491, 495 (2d Cir. 2006)). "In evaluating whether the requisite showing has been made, [courts] construe the pleadings and any supporting materials in the light most favorable to the plaintiffs." *Id.* (citing *Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010)).

Defendants move to dismiss on the ground that they are "not subject to New York State personal jurisdiction." (Dkt. No. 11, at 9–12). Plaintiff opposes dismissal, arguing that "a valid forum selection clause confers personal jurisdiction over the defendants. (Dkt. No. 14-10, at 7 (citing *Koninklijke Philips Elecs. v. Digit. Works, Inc.*, 358 F. Supp. 2d 328, 332 (S.D.N.Y. 2005)). Indeed, "[i]t is well established that '[p]arties can consent to personal jurisdiction through forum-selection clauses in contractual agreements.'" *NuMSP, LLC*, 462 F. Supp. 3d at 342 (quoting *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 103 (2d Cir. 2006)). Thus, having

found a valid and enforceable forum selection clause, the Court need not analyze Defendants' arguments concerning personal jurisdiction. *See id.* ("Where an agreement contains a valid and enforceable forum selection clause, . . . it is not necessary to analyze jurisdiction under New York's long-arm statute or federal constitutional requirements of due process." (quoting *Gordian Grp., LLC v. Syringa Expl., Inc.*, 168 F. Supp. 3d 575, 581 (S.D.N.Y. 2016)).

C.      **Transfer**

Alternatively, Defendants move to transfer this case to the Eastern District of North Carolina. "[A] motion to transfer venue on the grounds of inconvenience to the parties and witnesses is governed by 28 U.S.C. § 1404(a)." *Andrews v. A.C. Roman & Assocs., Inc.*, 914 F. Supp. 2d 230, 236 (N.D.N.Y. 2012). "The party seeking transfer bears the burden of demonstrating that transfer is warranted, and the burden is often described as a heavy one." *Id.* (citing *Lipton v. The Nature Co.*, 781 F. Supp. 1032, 1036 (S.D.N.Y. 1992)).

Defendants argue it would be more convenient for Defendants to litigate in North Carolina where Burke lives, while BHG, a business authorized to do business in North Carolina, would not be seriously inconvenienced. (Dkt. No. 11, at 23–24; Dkt. No. 17, at 9–10). But, as analyzed above, Plaintiff has exclusive choice to choose the forum, and Defendants explicitly waived the right to transfer the case to another jurisdiction. (*See* Dkt. No. 2, at 11). Furthermore, "[w]hen parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation." *Atl. Marine*, 571 U.S. at 64. As a result, it would not be appropriate to dismiss *or* transfer this case.

IV.     **CONCLUSION**

Having considered all of Defendants' arguments the Court finds that this is not one of those "rare case[s]" where the party resisting enforcement of a forum selection clause has met

"the heavy burden" necessary to overcome its enforceability. *Rabinowitz*, 75 F.4th at 81 (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 18 (1972)).  For all of the above reasons, it is

**ORDERED** that Plaintiff's motion to remand (Dkt. No. 7) is **GRANTED**; and it is further

**ORDERED** that this action is **REMANDED** to the Supreme Court of the State of New York, County of Onondaga for all further proceedings; and it is further

**ORDERED** that the Clerk is directed to mail a copy of this Memorandum-Decision and Order to the Clerk of the Supreme Court of the State of New York, Onondaga County for filing in *Bankers Healthcare Group, LLC v. TCEX LLC, et al.* Index No. 003454/2023, and it is further

**ORDERED** that the Defendants' motion to dismiss or transfer, (Dkt. No. 11), is **DENIED**.

**IT IS SO ORDERED.**

Dated: <u>February 28, 2024</u>
       Syracuse, New York

Brenda K. Sannes
Chief U.S. District Judge

22